IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

CHARLENE WALKER,

        Plaintiff,

    v.

CAROLYN W. COLVIN,
Acting Commissioner of the Social Security
Administration,

        Defendant.
_____

Civ. No. 3:16-cv-00008-PA

OPINION AND ORDER

PANNER, Judge:

    Plaintiff Charlene Walker brings this action for judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying her application for Title II Disability Insurance Benefits under the Social Security Act. For the reasons set forth below, the Commissioner's decision is affirmed and this case is dismissed.

1 – OPINION AND ORDER

## PROCEDURAL BACKGROUND

On December 21, 2011, plaintiff applied for Disability Insurance Benefits, alleging an onset date of July 1, 2010. Tr. 176-78. Her application was denied initially and upon reconsideration. Tr. 99-102, 104-06. On February 10, 2014, a hearing was held before an Administrative Law Judge ("ALJ"), wherein plaintiff was represented by counsel and testified, as did a vocational expert. Tr. 34-70. At the hearing, plaintiff amended her onset date to July 18, 2011, to coincide with when she stopped working at substantial gainful levels. Tr. 66. On June 13, 2014, the ALJ issued a partially favorable decision, finding plaintiff disabled as of September 1, 2012. Tr. 16-28. After the Appeals Council denied her request for review, plaintiff filed a complaint in this Court. Tr. 1-6.

## STATEMENT OF FACTS

Born on September 16, 1949, plaintiff was 61 years old on the amended alleged onset date of disability and 64 years old at the time of the hearing. Tr. 176. Plaintiff obtained a four-year college degree. Tr. 208. She worked previously as an administrative assistant to the dean of a liberal arts college. Tr. 63-64.

## STANDARD OF REVIEW

The court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation and internal quotations omitted). The court must weigh "both the evidence that supports and detracts from the

2 – OPINION AND ORDER

[Commissioner's] conclusions." *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is rational. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

The initial burden of proof rests upon the claimant to establish disability. *Howard v. Heckler*, 782 F.2d 1484, 1486 (9th Cir. 1986). To meet this burden, the claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Commissioner has established a five step sequential process for determining whether a person is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. § 404.1520. First, the Commissioner determines whether a claimant is engaged in "substantial gainful activity." *Yuckert*, 482 U.S. at 140; 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled.

At step two, the Commissioner evaluates whether the claimant has a "medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. at 140-41; 20 C.F.R. § 404.1520(c). If the claimant does not have a medically determinable, severe impairment, she is not disabled.

At step three, the Commissioner determines whether the claimant's impairments, either singly or in combination, meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Yuckert*, 482 U.S. at 140-41; 20 C.F.R. § 404.1520(d). If so, the claimant is presumptively disabled; if not, the Commissioner proceeds to step four. *Yuckert*, 482 U.S. at 141.

3 – OPINION AND ORDER

At step four, the Commissioner resolves whether the claimant can still perform "past relevant work." 20 C.F.R. § 404.1520(f). If the claimant can work, she is not disabled; if she cannot perform past relevant work, the burden shifts to the Commissioner. At step five, the Commissioner must establish that the claimant can perform other work existing in significant numbers in the national or local economy. *Yuckert*, 482 U.S. at 141-42; 20 C.F.R. § 404.1520(g). If the Commissioner meets this burden, the claimant is not disabled. 20 C.F.R. § 404.1566.

## THE ALJ'S FINDINGS

At step one of the five step sequential evaluation process outlined above, the ALJ found that plaintiff had not engaged in substantial gainful activity since the amended alleged onset date. Tr. 18. At step two, the ALJ determined that, as of July 18, 2011, plaintiff's status-post hip replacement, left hip degenerative joint disease, cervical degenerative disc disease, obesity, and skin lesions were medically determinable and severe. Tr. 19. Beginning September 1, 2012, plaintiff also suffered from the following impairment: status-post open reduction and internal fixation surgery. Tr. 26. At step three, the ALJ found plaintiff's impairments, either singly or in combination, did not meet or equal the requirements of a listed impairment prior to September 1, 2012. Tr. 20-26.

Because she did not establish presumptive disability at step three as of the amended alleged onset date, the ALJ continued to evaluate how plaintiff's impairments affected her ability to work. The ALJ resolved that, as of July 18, 2011, plaintiff had the residual functional capacity to perform sedentary work except she was "precluded . . . from exercising the high level of mental concentration and attention for a high level, skilled occupation." Tr. 20.

4 – OPINION AND ORDER

At step four, the ALJ determined plaintiff was unable to perform any past relevant work. Tr. 24. At step five, the ALJ found that, between July 18, 2011, and August 31, 2012, plaintiff had acquired work skills which were transferrable to other representative occupations that existed in significant numbers in the national and local economy. Tr. 25. However, beginning on September 1, 2012, the ALJ found that plaintiff was disabled under listings 1.02A and 1.06. Tr. 26.

## DISCUSSION

This case hinges on whether there is sufficient evidence in the record to establish an earlier disability onset date. Specifically, plaintiff argues that the ALJ erred by: (1) failing to find her enterocutaneous fistula medically determinable and severe as of the amended alleged onset date; and (2) improperly discrediting opinion evidence from Anthony Francis, M.D.

**I.    Step Two Finding**

Plaintiff contends the ALJ erred at step two by failing to address her enterocutaneous fistula. At step two, the ALJ determines whether the claimant has an impairment, or combination of impairments, that is both medically determinable and severe. 20 C.F.R. § 404.1520(c). An impairment is medically determinable if it is diagnosed by an acceptable medical source and based upon acceptable medical evidence, such as "signs, symptoms, and laboratory findings." SSR 96-4p, *available at* 1996 WL 374187; 20 C.F.R. § 404.1513(a). An impairment is severe if it significantly limits the claimant's ability to do basic work activities. 20 C.F.R. § 404.1521.

The step two threshold is low; the Ninth Circuit describes it as a "de minimus screening device to dispose of groundless claims." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996) (citation omitted). As such, any "error at step two [is] harmless [if] step two was decided in [the

5 – OPINION AND ORDER

claimant's] favor with regard to other ailments." *Mondragon v. Astrue*, 364 Fed. Appx. 346, 348 (9th Cir. 2010) (citing *Burch*, 400 F.3d at 682).

At step two, the ALJ found that, as of the amended alleged onset date, plaintiff's status-post hip replacement, left hip degenerative joint disease, cervical degenerative disc disease, obesity, and skin lesions were medically determinable and severe. Tr. 19. Accordingly, any alleged error at step two error was harmless because the ALJ continued the sequential evaluation process. *See Stout v. Comm'r of Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006) (mistakes that are "nonprejudicial to the claimant or irrelevant to the ALJ's ultimate disability conclusion" are harmless).

Regardless, an independent review of the record reveals that plaintiff's enterocutaneous fistula was not active during the relevant time period. Plaintiff had surgery in November 2009 to address her enterocutaneous fistula and ventral hernia. Tr. 272-56. At her first postoperative appointment in January 2010, her surgical wound was "improving." Tr. 357. In May 2010, she had her second postoperative appointment; while her surgical wound was still open, she did not complain of any abdominal pain. *Id.* At her next postoperative appointment in September 2010, plaintiff's wound continued to "[i]mprove," appearing "[s]maller" with "[n]o signs of infection" and "[h]ealing . . . scar tissue from the edges." Tr. 363; *see also* Tr. 361-62 (not reporting any abdominal pain when recounting her physical problems to her counselor in August 2010). Although plaintiff noted some abdominal pain during a counseling session in March 2011, she did not seek any treatment for her physical impairments again until May 2011. Tr. 363-71. At that time, her surgical wound had not completely closed, however, she reported "[n]o abdominal pain" and the ability to "walk up a flight of stairs without stopping." Tr. 371-78.

6 – OPINION AND ORDER

In the first medical record after the alleged onset date, from August 2011, plaintiff was "looking for a new job or temp job or even volunteer work," despite reporting pain in her "right shoulder, low back and left hip." Tr. 379-84. The only mention of any stomach-related issue states: "patient has started independent exercise . . . Will explore aquatic therapy in the future once abdominal wound has completely resolved." Tr. 384-86; *see also* Tr. 387-405 (outside of medication management, plaintiff did not seek any medical care between August and December 2011). In December 2011, plaintiff repeatedly denied any pain at the surgical site; even though there was a small area of the abdominal wound that remained open, her medical providers described it as "well-healed." *See, e.g.*, Tr. 409, 418, 426, 439. Thereafter, plaintiff did not report any symptoms associated with her enterocutaneous fistula until 2013, when she presented with abdominal pain. *Compare* Tr. 272-642 (medical records predating 2013), *with* Tr. 643-73 (medical evidence post-dating 2013).[1]

In sum, the record demonstrates that plaintiff's enterocutaneous fistula was diagnosed and surgically repaired prior to the alleged onset date. While her surgical wound did not immediately heal, plaintiff did not complain of any pain or restriction related thereto until well after the ALJ found that she was disabled. As a result, there is no acceptable medical evidence establishing that this condition impacted plaintiff's ability to complete basic work activities during the relevant time period. Finally, while not dispositive, the Court notes that the ALJ's residual functional capacity – which limited plaintiff to sedentary, unskilled work – would likely

---

[1] Plaintiff did not list enterocutaneous fistula, ventral hernia, or abdominal pain as the basis for her disability claim when applying benefits in December 2011, which further suggests she was not experiencing any limitations caused by these impairments during the relevant time period. Tr. 207.

7 – OPINION AND ORDER

have accommodated any symptoms associated with plaintiff's enterocutaneous fistula. Tr. 20. Therefore, reversal is not appropriate in regard to this issue.

## II.  Medical Opinion Evidence

Plaintiff asserts that the ALJ erred by failing to afford controlling weight to the opinion of Dr. Francis. There are three types of acceptable medical opinions in Social Security cases: those from treating, examining, and non-examining doctors. *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). "Generally, the opinions of examining physicians are afforded more weight than those of non-examining physicians, and the opinions of examining non-treating physicians are afforded less weight than those of treating physicians." *Id.* As such, the ALJ need only refer to "specific evidence in the medical record" in order to reject the opinion of a non-examining doctor. *Sousa v. Callahan*, 143 F.3d 1240, 1244 (9th Cir. 1998) (citation omitted).

In March 2014, Dr. Francis reviewed the record and completed a medical source statement. Tr. 687-92. The narrative portion of his opinion consisted of a brief summary of the medical evidence and a list of plaintiff's diagnoses. Tr. 691-92. Dr. Francis concluded, in relevant part, that plaintiff "equals 5.06 for the enterocutaneous fistula and ventral hernia since the AOD of either [7/01/09] or [7/01/10]." Tr. 691 (brackets in original).

The ALJ gave "little weight to this part of Dr. Francis' opinion" because it was "inconsistent with [plaintiff's] continued substantial gainful work activity through July 18, 2011, as well as [plaintiff's] testimony that she would have been able to continue working at her job had she not been terminated." Tr. 27. The ALJ also found that Dr. Francis' opinion was "inconsistent with [plaintiff's] weekly certification for State unemployment benefits." *Id.* An

8 – OPINION AND ORDER

ALJ may reject a medical opinion that is inconsistent with the evidence of record. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008).

Substantial evidence supports the ALJ's conclusion in the case at bar. Plaintiff worked at substantial gainful levels for years after Dr. Francis opined she became disabled under listing 5.06. Tr. 195, 198; *see also Weetman v. Sullivan*, 877 F.2d 20, 22-23 (9th Cir. 1989) (affirming the ALJ's rejection of a treating doctor's opinion that that claimant was "totally" disabled as of 1979 because, amongst other reasons, it was "clearly inconsistent [with the fact that the claimant] engaged in substantial gainful activity during the 1981 calendar year"). Further, plaintiff testified at the hearing that she would have continued working full-time had she not been terminated; she also filed for and received unemployment benefits from September 2011 through the end of 2012. Tr. 42, 48, 185-86.

Thus, Dr. Francis's disability determination, especially as it relates to timing, is wholly without support in the record. In fact, Dr. Francis' report does not reference any records prior to 2013 indicating that plaintiff was suffering from pain or other complications as a result of her enterocutaneous fistula or ventral hernia. Tr. 691-92. This is consistent with the Court's independent review of the record; as addressed in section I, plaintiff's surgical wound was healing well, albeit in a delayed fashion, and plaintiff did not report any symptoms that could be fairly traced to those conditions until after the ALJ determined she was disabled.

As such, even crediting Dr. Francis' opinion in its entirety, plaintiff would not have been entitled to benefits until two full years after he opined she became disabled under listing 5.06. *See* 20 C.F.R. § 404.1520(b) ("[if] the work you are doing is substantial gainful activity, we will find that you are not disabled regardless of your medical condition or your age, education, and

9 – OPINION AND ORDER

work experience"). As the ALJ resolved, this discrepancy, especially in conjunction with the other evidence of record, undermines Dr. Francis' medical conclusions. The ALJ's assessment of Dr. Francis' opinion is upheld.

## CONCLUSION

For the foregoing reasons, the Commissioner's final decision is AFFIRMED and this case is DISMISSED. All pending motions are DENIED as moot.

IT IS SO ORDERED.

DATED this __7__ day of November 2016.

Owen M. Panner
United States District Judge

10 – OPINION AND ORDER